[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14728
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-00074-MSH

NELSON DELGIUDICE, JR.,

Plaintiff-Appellant,

versus

JARVIS PRIMUS,
Officer, Hancock State Prison,

Defendant-Appellee,

LARRY MILNER, JR.,
Officer, Hancock State Prison, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(February 16, 2017)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Georgia prisoner Nelson DelGiudice, Jr. appeals pro se the district court's dismissal of his 42 U.S.C. § 1983 action against Hancock State Prison employees Jarvis Primus, Larry Milner and Patricia Evans, alleging violations of the Eighth and Fourteenth Amendments. While almost all of DelGiudice's claims were eventually dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), one claim -- an excessive force claim against Primus -- went to trial. Three months before trial, when discovery issues arose, the district court appointed counsel for DelGiudice. At trial, the jury returned a verdict in favor of Primus. On appeal, DelGiudice argues that: (1) the district court abused its discretion by denying his motions to appoint counsel until three months before the trial began; (2) the district court erred by dismissing his due process claims for failure to state a claim; (3) the district court erred by denying his motions to further amend his complaint to add and amend due process claims; (4) the district court abused its discretion by excluding certain evidence; and (5) his trial counsel was ineffective. After thorough review, we affirm.

We review the denial of a motion to appoint counsel for abuse of discretion. Bass v. Perrin, 170 F.3d 1312, 1319 (11th Cir. 1999). We review de novo the grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P.

2

12(b)(6). Thompson v. RelationServe Media, Inc., 610 F.3d 628, 633 (11th Cir. 2010). We review for abuse of discretion a district court's denial of leave to amend a complaint, but review de novo any legal conclusion as to whether the amendment would have been futile. SFM Holdings, Ltd. V. Banc of Am. Sec., LLC, 600 F.3d 1334, 1335 (11th Cir. 2010). The evidentiary rulings of the district court are reviewed for a clear abuse of discretion. Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1068 (11th Cir. 2014). We will not overturn an evidentiary ruling and order a new trial unless the objecting party has shown a substantial prejudicial effect from the ruling. See Fed. R. Evid. 103; Maiz v. Virani, 253 F.3d 641, 667 (11th Cir. 2001).

Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Despite the liberal pleading standard for pro se litigants, their failure to brief issues on appeal still amounts to an abandonment of those issues. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). "[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014); see also Fed. R. App. P. 28(a)(8)(A), (e) (providing that the burden is on the appellant to establish the issues on appeal with support from the record).

First, we are unpersuaded by DelGiudice's claim that the district court abused its discretion by delaying the appointment of counsel until three months before the trial began.  Under 28 U.S.C. § 1915(e)(1), the district court "may request an attorney to represent any person unable to afford counsel."  However, prisoners raising civil rights claims, like other civil litigants, have no absolute constitutional right to counsel.  Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987).  Appointment of counsel in civil cases is, rather, a privilege justified only by exceptional circumstances, like the presence of facts and legal issues which are so novel or complex as to require the assistance of a trained practitioner.  Id.  The key is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court.  Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993).  Where the facts and issues are simple, he usually will not need such help.  Id.

Here, because DelGiudice was a prisoner raising a § 1983 civil rights claim, he had no absolute constitutional right to counsel.  Instead, he needed to show exceptional circumstances, and early in the proceedings, he failed to make this showing.  As the record reveals, DelGiudice set forth the essential factual allegations underlying his claims in his complaint and his amended complaints, and the applicable legal doctrines of excessive force and due process violations were readily apparent.  As for his argument that he had limited access to a law library and legal materials, those limitations do not establish exceptional

4

circumstances because, without them, a prisoner can still set forth the essential merits of his position, like DelGiudice did in the district court.  See Kilgo, 983 F.2d at 193.  And, notably, when complex issues involving discovery arose, the district court appointed counsel to navigate the legal issues.  The court explained that two circumstances in the case had changed the analysis from previous denials: (1) DelGiudice contended that Primus refused to respond to his timely discovery requests; and (2) the time for discovery and dispositive motions had now lapsed and the case was ready for trial.  On this record, we cannot say that the district court abused its discretion by denying DelGiudice's motions for appointment of counsel until three months before trial.

We also find no merit in DelGiudice's argument that the district court erred by dismissing his due process claims for failure to state a claim.  The facts as pled in a complaint must state a claim for relief that is plausible on its face to avoid dismissal for failure to state a claim.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A prisoner may claim a violation of a protected liberty interest arising out of his confinement in punitive segregation, triggering due process requirements, if the placement (1) will inevitably affect the duration of his sentence; or (2) imposes atypical and significant hardship on the inmate in relation to the ordinary incidents

5

of prison life.  Sandin v. Conner, 515 U.S. 472, 484-87 (1995).  Both the period of time and the severity of the hardships must be taken into consideration.  See Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004).  Conditions of confinement can amount to an atypical and significant hardship when a prisoner alleges that he was in solitary confinement, locked in an extremely small, closet-sized space, with minimal contact with other human beings for a prolonged time exceeding 500 days.  Id.  We've also said that the disciplinary sanction of one year in solitary confinement may trigger procedural due process protections under Sandin.  Williams v. Fountain, 77 F.3d 372, 374 n.3 (11th Cir. 1996).  The Supreme Court has held that a prisoner who was confined indefinitely in a cell illuminated 24 hours per day, deprived of almost all human contact, allowed to exercise for only one hour per day in a small indoor room, and disqualified from parole consideration established an atypical and significant hardship.  Wilkinson v. Austin, 545 U.S. 209, 224 (2005).  In that case, the Supreme Court noted that the indefinite nature of the confinement and the disqualification for parole eligibility were particularly severe.  Id.  It also observed that while any of the severe conditions standing alone might not be sufficient to create a liberty interest, taken together they could amount to an atypical and significant hardship.  Id.

The Supreme Court has held, however, that when disciplinary segregation or solitary confinement basically mirrors the conditions imposed upon inmates in

6

administrative segregation and protective custody, it does not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. Sandin, 515 U.S. at 486. We've also held that the Georgia parole system does not create a liberty interest protected by the Due Process Clause, since "the substantial discretion reserved by the Georgia Board of Pardons and Parole belies any claim to a reasonable expectation of parole." Sultenfuss v. Snow, 35 F.3d 1494, 1499 (11th Cir. 1994).

Where due process protections are triggered, the conclusions of prison disciplinary bodies must be supported by "some evidence in the record." Williams, 77 F.3d at 375 (quotation omitted). In reviewing their decisions, we do not independently assess the credibility of witnesses or weigh the evidence. Id. Instead, we ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455–56 (1985).

For starters, DelGiudice failed to establish the violation of a protected liberty interest when he was placed in punitive segregation or the "Special Management Unit" ("SMU") because he failed to show that it would inevitably affect the duration of his sentence. See Sandin, 515 U.S. at 484. DelGiudice did not allege that his sentence would be affected at all, either in his initial complaint or in his response to supplement his complaint. Even considering his other filings, the most

7

he ever argued was that placing him in the SMU would have an adverse effect on his parole eligibility, which would inevitably cause him to spend more time in prison. However, the Georgia parole system does not create a liberty interest protected by the due process clause because, in Georgia, there is no legitimate expectation of parole. Sultenfuss, 35 F.3d at 1499. Thus, DelGiudice failed to show that placement in SMU would affect the duration of his sentence or that he had a protected liberty interest in his affected parole.

As for whether his placement in SMU imposed an atypical and significant hardship in relation to ordinary prison life, his allegations failed to state a claim. Sandin, 515 U.S. at 484. In his complaints, DelGiudice alleged only that he was put into segregation for a long period of time. In addition, he noted that he had a roommate and, therefore, was not in solitary confinement. See Williams, 77 F.3d at 374 n.3. These allegations are simply insufficient to state a claim.

However, in his responses to the motions to dismiss, DelGiudice claimed that he had been in SMU for over three years; the SMU cells were 60 square feet; he was limited to recreation two times a week, showers three times a week, a phone call once a month, and cell cleaning once a week; he was prohibited from attending religious or educational programs, and from associating with other prisoners; and he was deprived of an adequate law library and legal books. He also

said, as we noted, that placing him in the SMU adversely affect his parole eligibility which would inevitably cause him to spend more time in prison.

But even if, taking all of these claims together, DelGiudice had established an atypical and significant hardship in which he had a protected liberty interest, he was nevertheless afforded the minimum requirements of due process. At the hearing, he was given the opportunity to present evidence, to testify, and to ask questions. He also admits that he was able to deny the accusations in the disciplinary report filed against him. DelGiudice does not say he was given insufficient notice or prevented from presenting his side; instead, he says that prison employee Patricia Evans hid evidence or lacked evidence against him when she found him guilty at the hearing. He also alleged that, in Evans's written justification for the guilty finding, she said that the finding was based on a factual statement, but did not describe it in detail. Our role, however, is not to independently assess the credibility of witnesses or weigh the evidence, but to ask whether <u>any</u> evidence in the record could support the conclusion reached by the disciplinary board. <u>Superintendent, Mass. Corr. Inst.</u>, 472 U.S. at 455–56. At the hearing, DelGiudice expressly challenged the allegations in the disciplinary report and Evans's written justification provided that a factual statement supported the guilty finding. We cannot say that no evidence in the record could support the conclusion reached by the disciplinary board.

9

In short, because DelGiudice was given notice, an opportunity to testify and ask questions, and a written explanation of the ruling, he has not established that his disciplinary hearing violated due process.  As a result, the district court correctly dismissed DelGiudice's due process claim for failure to state a claim because the facts as pled did not state a claim for relief plausible on its face or that raised a right to relief beyond a speculative level.  Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

We also reject DelGiudice's claim that the district court erred by denying his motion to further amend his complaint to add and amend due process claims. When more than 21 days have passed since service of the complaint or responsive pleading, a party must obtain either written consent of the opposing party or the court's leave.  See Fed. R. Civ. P. 15(a).  Leave to amend should be freely granted by a court "when justice so requires."  Id.  A district court may properly deny leave to amend the complaint under Rule 15(a) if an amendment would be futile.  Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262-63 (11th Cir. 2004).  An amendment is futile when the complaint as amended would still be properly dismissed. Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010).

Here, the district court correctly denied DelGuidice's motions to further amend his due process claim because they would have been futile.  See Fed. R. Civ. P. 15(a)(2); Hall, 367 F.3d at 1262-63.  As we've explained, even if

10

DelGiudice had sufficiently pled a protected liberty interest in his placement in confinement, his claim would still have failed because he has not shown -- nor did the proposed allegations show -- that his due process rights were violated. Accordingly, the district court did not err by denying his motions to amend.

Nor do we agree that the district court abused its discretion by excluding evidence that: (1) DelGiudice was placed in the SMU as a result of a disciplinary action filed against him; (2) he had made a statement to the Georgia Bureau of Investigation ("GBI") that he would take a polygraph test to show that his alleged facts were true; (3) he told a GBI agent that he could not recall the incident; and (4) the state criminal charges against him were "dead docketed," or dismissed. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action. Fed. R. Evid. 401. In addition, evidence of a witness's willingness to submit to a polygraph examination is inadmissible. United States v. Hilton, 772 F.2d 783, 785 (11th Cir. 1985).

Here, the district court did not abuse its discretion by excluding the challenged evidence. As for the evidence concerning the reason behind his confinement in segregation, DelGiudice was not held in segregation at the time of the alleged excessive force in June 2010, but was transferred to SMU after the incident from which DelGiudice's claim arose. Thus, this evidence was irrelevant

11

to whether prison employee Jarvis Primus used excessive force against DelGiudice on June 4, 2010, which was the only issue at trial. See Fed. R. Evid. 401. As for the evidence that the criminal charge against DelGiudice for assaulting prison employee Larry Milner was "dead docketed," it was also irrelevant to whether Primus used excessive force against DelGiudice. See id. Additionally, evidence that DelGiudice told a GBI agent that he was willing to take a polygraph test was inadmissible. See Hilton, 772 F.2d at 785. And as for the DelGiudice's alleged statement to a GBI agent that he did not remember the events that occurred after he was knocked out by Primus, the record does not include any discussion or even briefing regarding this statement by the parties before trial. But in any event, DelGiudice has not provided any evidence that exclusion of this statement had a substantial prejudicial effect on the outcome of his trial. See Maiz, 253 F.3d at 667; Tannenbaum, 148 F.3d at 1263; Fed. R. App. P. 28(a)(8)(A), (e). Accordingly, we affirm the district court's evidentiary rulings.

Finally, we reject DelGiudice's claim that his trial counsel was ineffective. Notably, the Sixth Amendment standards for effective counsel in criminal cases do not apply in the civil context. Mekdeci By & Through Mekdeci v. Merrell Nat. Labs., a Div. of Richardson-Merrell, Inc., 711 F.2d 1510, 1522-23 (11th Cir. 1983). For that reason, a party does not have any right to a new trial in a civil suit because of inadequate counsel, but has as a remedy a suit against the attorney for

12

malpractice.  Id.  There is, therefore, no basis for DelGiudice's claim of ineffective assistance of counsel.

**AFFIRMED**.

MARTIN, Circuit Judge, concurring:

The majority affirms the District Court's dismissal of Mr. DelGiudice's due process claim brought pursuant to 42 U.S.C. §1983.  The majority holds that Mr. DelGiudice was afforded the minimum requirements of due process required by Eleventh Circuit precedent.  I read our Circuit precedent the same way.  Therefore I agree that Mr. DelGiudice is due to lose his appeal in this case, but I reach my decision for this reason alone.